**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JERAMIAH BROWN,

                                        Plaintiff,                          5:22-cv-761 (BKS/ML)

v.

FAT DOUGH INCORP., doing business as DOMINOS
PIZZA,

                                        Defendant.

**Appearances:**

*Plaintiff pro se:*
Jeramiah Brown
Theresa, NY 13691

*For Defendant:*
Christopher P. Maugans
William H. Hython
Goldberg Segalla, LLP
665 Main Street
Buffalo, NY 14203

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

        Plaintiff Jeramiah Brown, proceeding *pro se*, brings this action against Defendant Fat

Dough Incorp., doing business as Domino's Pizza,[1] alleging employment discrimination in

violation of federal law. Plaintiff filed an Amended Complaint on October 31, 2022. (Dkt. No.

7). Following the Court's review of the Amended Complaint, the Court dismissed several of

---

[1] Plaintiff generally refers to Defendant as "Dominos," (*see* Dkt. No. 7), however, as Defendant uses the spelling "Domino's," (Dkt. No. 20, at 1),  the Court will use this spelling unless it is quoting Plaintiff.

Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2)(B). (Dkt. No. 15). The following claims survived initial review: (1) a discrimination claim under Title I of the Americans with Disabilities Act ("ADA"); (2) a retaliation claim under Title V of the ADA; (3) a hostile work environment claim under Title VII of the Civil Rights Act of 1964 ("Title VII"); (4) a sexual harassment claim under Title VII, and (5) a retaliation claim under Title VII. (Dkt. No. 15). Defendant now moves to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (Dkt. No. 20).[2] The motion is fully briefed. (*See* Dkt. No. 41). For the following reasons, the Court grants Defendant's motion to dismiss in part and denies it in part.

## II.   FACTS[3]

Plaintiff's national origin is Norwegian, and he "identifies as [n]on[b]inary for [s]ex."[4] (Dkt. No. 7, at 3). Plaintiff was born with thrombocytopenia with absent radius, also known as TAR Syndrome. (*Id.* at 3, 15; *see* Dkt. No. 11, at 1–2 ("Physicians Statement of Applicant's/ Employee's Disability," stating Plaintiff has TAR Syndrome and a "[c]ongenital absence of

---

[2] Defendant also seeks to dismiss any state law claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction based on New York's election of remedies doctrine. (*See* Dkt. No. 20; Dkt. No. 20-6, at 16–18). However, Plaintiff does not appear to have asserted any state law claims in the Amended Complaint. (*See* Dkt. No. 12, at 4; Dkt. No. 15). Accordingly, the Court does not address this issue.

[3] The facts are drawn from Plaintiff's Amended Complaint, (Dkt. No. 7), as well as the charge filed with the NYSDHR by Plaintiff, (Dkt. No. 20-3), which is explicitly referenced in the Amended Complaint, (Dkt. No. 7, at 15), and the NYSDHR No Probable Cause determination, (Dkt. No. 20-4), both of which the Court may take judicial notice, *Guy v. MTA N.Y.C. Transit*, 407 F. Supp. 3d 183, 191 (E.D.N.Y. 2016) (taking judicial notice of NYSDHR materials, noting that the court "may take 'judicial notice of the public records and reports of relevant administrative bodies'") (citation omitted). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). In addition, because Plaintiff is *pro se*, the Court may also consider facts alleged in his other filings. *Torrico v. Int'l Bus. Machines Corp.*, 213 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2002). Accordingly, the Court has also considered the "Physicians Statement of Applicant's/Employee's Disability," (Dkt. No. 11), and, to the extent they arise out of the facts alleged in the Amended Complaint, the additional factual allegations Plaintiff makes in his Sur-Reply, (Dkt. No. 40). *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) ("A *pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint'" (citation omitted)).

[4] The Amended Complaint uses "he/him/his" pronouns to refer to Plaintiff. (*See* Dkt. No. 7). The Court does the same.

radius")).[5] The "Physicians Statement" is signed on June 21, 2018, and indicates that Plaintiff has a "[l]imitation for lifting or carrying > 50 lbs." (Dkt. No. 11, at 2). TAR Syndrome "substantially limits" Plaintiff's "ability" to "us[e] their arms and hands effectively" and causes Plaintiff "to feel fatigue." (Dkt. No. 40, at 2). In addition, Plaintiff was diagnosed with a Traumatic Brain Injury ("TBI") in 2014. (Dkt. No. 7, at 3).

Plaintiff began employment with Domino's Pizza on October 8, 2021. (*Id.*). He initially was employed as a pizza delivery driver. (*See id.* at 4, 9, 15). In the first week of his employment, Plaintiff "was forced to shadow" a manager, Richard Filkins, and another delivery driver, Megan. (*Id.* at 3). Megan "harassed" Plaintiff and "stole [Plaintiff's] [d]elivery change," which dispatcher Brian Galloway provided to every delivery driver. (*Id.*). Plaintiff alleges that "Megan had a conversation with [Plaintiff] about his National Origin and questioned his National Origin ethnicity" prior to stealing the change. (*Id.*). Plaintiff was required to pay back the money "even though Megan openly admitted" that she had taken Plaintiff's change envelope "due to her running out of change on 10/13/2021." (*Id.*).

Plaintiff alleges that Filkins and Megan harassed Plaintiff "[n]umerous" times, including on October 12, October 13, and October 14, 2021. (*Id.* at 6). According to Plaintiff, Filkins asked Plaintiff "about his [s]exual orientation on [n]umerous [o]ccassions [sic]," which Plaintiff reported to his manager, Martin Wilder. (*Id.* at 3). Plaintiff "reported on numerous occasions [sic] feeling uncomfortable and harassed by Coworkers Megan and" Filkins. (*Id.*).

Plaintiff alleges that "Filkins retaliated and harassed [Plaintiff] after questioning [Plaintiff] of his [s]exual [o]rientation." (*Id.*). Plaintiff states that Filkins asked Plaintiff "for

[5] The "Physician Statement" also refers to "chronic nausea secondary to ongoing medical condition" and a "bowel disorder" and states that Plaintiff has received a diagnosis of "depression with anxiety." (Dkt. No. 11, at 1–2). As none of the allegations in the Amended Complaint refer to nausea, a "bowel disorder" or "depression with anxiety", the Court does not consider them. *See Davila*, 343 F. Supp. 3d at 267.

sexual favors in an environment of a workplace," which Plaintiff "refused and denied." (*Id.*; *see also id.* at 6 ("[Filkins] asked [Plaintiff] for explicit sexual favors and asked how [Plaintiff] performs certain sexual favors."). According to Plaintiff, after giving Filkins "answers that [Filkins] did not like," Filkins "retaliated and assigned [Plaintiff] to Megan." (*Id.* at 3). Plaintiff reported this harassment to "all managers on scene." (*Id.*). Additionally, Plaintiff alleges that when Plaintiff would not answer Filkins' questions, he "bullied" Plaintiff and called him "[a]ntisocial" and "told other [e]mployees that [Plaintiff] was antisocial." (*Id.* at 6).

On October 14, 2021, Plaintiff "reported in the Open Door Policy" that Megan had taken money from him and asked to work "earlier [d]ay shifts to accommodate his disability" and "to work separate shifts from [Filkins] due to being sexually harassed and humiliated." (*Id.*). Plaintiff also requested "a resolution for the hostile work environment and being [s]exually [h]arassed." (*Id.*).

Wilder scheduled Plaintiff for an earlier shift on October 19, 2021. (*Id.*). That day, Filkins "yell[ed], scream[ed], and questioned every employee" about his or her schedule. (*Id.*). Filkins "walked up to [Plaintiff], screamed at [Plaintiff], and questioned him [sic] why he was scheduled [sic] an earlier shift." (*Id.*). Plaintiff replied "that Martin Wilder scheduled the shifts." (*Id.*). Filkins also "yelled at the manager threatening to quit Dominos if [Plaintiff] was ever scheduled for an earlier shift again." (*Id.*).

At some time prior to October 22, 2021, an employee used a toilet plunger as a door stopper "causing the door to maliciously close on [Plaintiff] when [Plaintiff] was leaving and entering to deliver pizzas." (*Id.* at 9).

On October 22, 2021, Galloway and Wilder "yelled at [Plaintiff] for not being [f]ast or quick enough to be a [d]elivery [d]river," told Plaintiff "he would no longer be delivering pizzas," and "assigned [Plaintiff] to the [d]ishwasher." (*Id.* at 4, 9).

On October 27, 2021, an employee, Ethan Talley, "threw [d]irty water and [m]ushrooms at" Plaintiff while Plaintiff "was washing dishes." (*Id.* at 4, 11). During this incident, "other employees laughed and humiliated" Plaintiff and said that Plaintiff "would allow them to treat [Plaintiff] like dog shit because [Plaintiff] is disabled." (*Id.*; *see also id.* at 11). Plaintiff reported the incident to Wilder, who "yelled at [Plaintiff] for sitting outside on a bench." (*Id.* at 4, 11) Wilder "did nothing to resolve the harassment." (*Id.*). Plaintiff also states that he told Dorothy, a supervisor, about the harassment. (*Id.* at 4, 11).

On October 28, 2021, while Plaintiff "was washing dishes for the restaurant," a Domino's employee broke into Plaintiff's car and "drew a smiley face with pizza grease on the inside of his windshield." (*Id.* at 4; *see also id.* at 11). Plaintiff reported the incident to Wilder and Dorothy. (*Id.* at 4, 11). Plaintiff asked "Wilder to confirm that someone broke into his car and drew a smiley face with pizza grease because [Plaintiff] was in utter shock and in disbelief that someone would intentionally break into his vehicle while [Plaintiff] was working." (*Id.* at 11). Wilder confirmed with Plaintiff that an individual had broken into Plaintiff's car, "and was concerned for [Plaintiff's] [s]afety due to the [s]miley face." (*Id.* at 11; *see also id.* at 4). Plaintiff asked "the managers" to look at the security camera footage, but the "[m]anagers refused to investigate." (*Id.* at 11).

The same day, Plaintiff reported to the military police at Fort Drum that a coworker broke into his car and smeared pizza grease inside of it, and that Plaintiff "ha[d] been dealing with ongoing harassment from other employees based on his [d]isability and sexual orientation." (*Id.*

at 3, 11). A detective investigating the incident spoke to Dorothy, who "lied to the detective and told the [d]etective that [Plaintiff] was not an employee," and "refused to speak" further to the detective except to say "that the Regional Manager would get ahold of the detective." (*Id.* at 11).

On October 28 and 29, Galloway told Plaintiff "to never show up for a shift again" and that Plaintiff "wasn't allowed to work at Dominos anymore due to involving the [p]olice." (*Id.*; *see also id.* (Galloway told Plaintiff "to go home early in a hostile way and told [Plaintiff] that he will never work for Dominos again due to reporting the incidents.")). Galloway yelled at Plaintiff, telling him that Galloway "was going to do it his way." (*Id.*).

Plaintiff states he "fil[ed] a NYSDHR Complaint and EEOC Complaint." (*Id.* at 15). Plaintiff's NYSDHR charge was dated November of 2021. (Dkt. No. 20-3, at 6; *see also id.* at 2 (marking the charge as received on November 16, 2021)). The NYDHR issued a "no probable cause" determination ("No Probable Cause Determination") on May 3, 2022. (Dkt. No. 20-4, at 4).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[W]here, as here, a plaintiff is proceeding *pro se,* the complaint must be considered under a more lenient standard than that accorded 'formal pleadings drafted by lawyers.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 313 (E.D.N.Y. 2015) (citation omitted). A *pro se* Plaintiff's complaint is to be liberally construed "to raise the strongest arguments that it suggests." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80 (2d Cir. 2020). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Darby v. Greeman*, 14 F.4th 124, 128 (2d Cir. 2021) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

## IV.    DISCUSSION

### A.    Preclusion

Defendant argues that Plaintiff is "barred by *res judicata/collateral estoppel* from" bringing his claims before the Court because he has already received a No Probable Cause Determination from the NYSDHR, which the New York Supreme Court of Jefferson County affirmed. (Dkt. No. 20-6, at 18–19). Plaintiff does not respond to this argument.

"The federal full faith and credit statute provides, in relevant part, that the 'judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Lawtone-Bowles v. City of New York*, 22 F. Supp. 3d 341 (S.D.N.Y. 2014) (quoting 28 U.S.C. § 1738). "Under the full faith and credit statute, 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

"The doctrine of collateral estoppel—also known as issue preclusion—prohibits a party from re-litigating an issue in certain circumstances. Under New York law, collateral estoppel bars claims where '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" *Id.* (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2010)).

Further, "a state court affirmation of a state administrative determination is entitled to preclusive effect in federal court, so long as the state's administrative proceedings satisfy the minimum requirements of the Due Process Clause of the Fourteenth Amendment." *Lewis v. Health & Hosps. Corp.*, No. 11-cv-99, 2013 WL 2351798, at *4, 2013 U.S. Dist. LEXIS 77668, at *11 (S.D.N.Y. May 31, 2013) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982)). A NYSDHR "determination finding no probable cause and dismissing a complaint, coupled with a state court judgment affirming the administrative determination, preclude[s] further litigation of federal claims arising from the same facts resolved by the prior proceedings." *Id.*, 2013 WL 2351798, at *4, 2013 U.S. Dist. LEXIS 77668, at *12 (citing *Kremer*, 456 U.S. at 485). However, a NYSDHR determination by itself, without state court involvement, is not enough to create preclusive effect. *See Lawtone*, 22 F. Supp. 3d at 348 n.7 (explaining that a NYSDHR proceeding cannot by itself have preclusive effect "because [28 U.S.C.] § 1738 applies to the judgments of state courts, not administrative agencies, and the [NY]SDHR's determination in this case was not judicially reviewed" (citations omitted)); *Yam Yam Koo v. Dep't of Bldgs. of City of N.Y.*, 218 Fed. App'x 97, 99 (2d Cir. 2007) (summary order) ("While

8

the agency determination in and of itself did not preclude his action, preclusive effect attached once the state court reviewed and affirmed the [NY]SDHR's finding of no probable cause.").

Here, Plaintiff received a No Probable Cause Determination from the NYSDHR after filing a charge with the agency. (Dkt. No. 20-4). While Defendant attaches "a copy of the Jefferson County docket relating to a complaint filed by Plaintiff against Fat Dough on May 25, 2022, bearing case number 22-1408," (Dkt. No. 20-1, ¶ 6), the two-page document, (Dkt. No. 20-5), contains little information. It indicates it is from "NY Supreme – Jefferson," lists the case name, filing date, status ("Closed"), indicates it is "Tort-Other Negligence; Civil," and states the "decision type" was a "long form order," that the decision was "closed" and "denied," and that the order was signed and sent to the country clerk on August 15, 2022. (*Id.* at 2–3). As the "docket" Defendant submitted contains no information regarding the facts or issues, the Court has no basis for evaluating whether the issues litigated and "facts alleged in the present action are the same as those alleged in the prior proceedings." *Lewis*, 2013 WL 2351798, at *5, 2013 U.S. Dist. LEXIS 77668, at *13. Accordingly, Defendant's motion to dismiss on grounds of res judicata or collateral estoppel is denied.

### B.     Administrative Exhaustion

Defendant argues that if this Court decides that the doctrines of res judicata or collateral estoppel are inapplicable "due to differences between the NYSDHR Complaint and the Amended Complaint," "the only logistical [sic] conclusion is that Plaintiff failed to exhaust his administrative remedies" with respect to the claims in the Amended Complaint, and it must be dismissed. (Dkt. No. 20-6, at 19–21). Plaintiff does not respond to this argument.

As the Court concludes that Defendant has failed to show the applicability of res judicata or collateral estoppel to the claims in this case, and Defendant does not advance any other argument regarding exhaustion of administrative remedies, as is its burden in connection with an

affirmative defense, *see Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 490–91 (2d Cir. 2018) (Title VII context); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 155 (E.D.N.Y. 2010) (ADA context), Defendant's motion to dismiss based on failure to exhaust administrative remedies is denied.

### C.      Contradictions in the Record

Defendant claims that Plaintiff's Amended Complaint contradicts his description of events in his NYSDHR charge, and thus asserts that the Court should not accept the contradicting facts alleged in the Amended Complaint as true for purposes of the motion to dismiss. (Dkt. No. 20-6, at 21–23). Plaintiff does not respond to this argument.

It is well-settled that in deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). However, courts have found a narrow exception to this rule when "a document relied on in the complaint" or facts of which the court may take judicial notice, "contradict[] allegations in the complaint," then "the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *See Poindexter v. EMI Rec. Grp. Inc.*, No. 11-cv-559, 2012 WL 1027639, at *2, 2012 U.S. Dist. LEXIS 42174, at *6  (S.D.N.Y. Mar. 27, 2012); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal where "attenuated allegations" supporting the claim were "contradicted both by more specific allegations in the Complaint and by facts of which [the court] may take judicial notice"); *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994) ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."), *aff'd*, 43 F.3d 1458 (2d Cir. 1994).

Here, Defendant point to two instances where statements in the Amended Complaint contradict statements in Plaintiff's NYSDHR charge and the No Probable Cause Determination, and urges the Court to take judicial notice of the documents. The first is that the No Probable Cause Determination states that "Plaintiff alleged that he resigned his employment from Fat Dough," while in his Amended Complaint, Plaintiff alleges he was fired. (Dkt. No. 20-6, at 22–23; *see also* Dkt. No. 7, at 12). While the No Probable Cause Determination may refer to resignation, the NYSDHR charge itself does not contain any statements that Plaintiff resigned his position,[6] (Dkt. No. 20-3), and review indicates that Plaintiff checked a box indicating he alleges he was fired or laid off. (*See id.* at 4). In any event, because any judicial notice of the Probable Cause Determination would be limited to "the fact that the statement was made" and "without regard to the truth of [its] contents," *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022) (quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)), Defendant's argument regarding resignation is without merit.

The second instance of alleged contradiction stems from the Amended Complaint's inclusion of allegations concerning harassment by Richard Filkins and Megan. (Dkt. No. 20-6, at 23). Defendant argues that "[i]n the NYSDHR Complaint Plaintiff alleges the harasser was a co-worker named 'Ethan' but in the Amended Complaint he claims the issues were with Mr. Filkins and 'Megan.'" (Dkt. No. 20-6, at 23). However, because the Court's notice of the NYSDHR charge is limited to the fact it exists and contains certain information, and the Court considers the NYSDHR charge "without regard to the truth" of its contents, it is immaterial, at this stage of the proceedings, that it may contain contradictory facts. *Staehr*, 547 F.3d at 425 (explaining that

---

[6] Plaintiff's "[d]escription of alleged discrimination" appears to be cut off. (Dkt. No. 20-3, at 5). Consequently, the Court cannot determine if Plaintiff explicitly told the NYSDHR that he resigned on this record.

courts may properly "take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information," they do so "without regard to the truth of their contents"). Indeed, Defendant cites no case law that would support a conclusion that minor differences between an administrative complaint provides a basis for a Court to deviate from the long-established rule that it must accept the factual allegations in a complaint as true. *See McCarthy*, 482 F.3d at 191.

Accordingly, the Court accepts as true the allegations in his Alleged Complaint for the purposes of evaluating Defendant's motion.

### D. Employment Discrimination Claims

Defendant moves to dismiss Plaintiff's: ADA disability discrimination claim; Title VII hostile work environment claim (alleging sexual, disability, and national origin harassment); and ADA and Title VII retaliation claims. (Dkt. No. 20-6). Plaintiff opposes Defendant's motion. (Dkt. Nos. 37, 40).

### 1. ADA Disability Discrimination

Defendant moves to dismiss Plaintiff's disability discrimination claim on the basis that Plaintiff fails to allege that "that he was a qualified individual with a disability or that Fat Dough discriminated against him on the basis of it." (Dkt. No. 20-6, at 23). Plaintiff opposes Defendant's motion. (Dkt. No. 40, at 1–2).

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A *prima facie* case of disability discrimination under the ADA requires a plaintiff to show: "(1) the defendant is covered by the ADA; (2) [the] plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3)

[the] plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [the] plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).

But "a plaintiff alleging disability discrimination 'is not required to plead a *prima facie* case . . . to defeat a motion to dismiss,' and 'need only give plausible support to a minimal inference of discriminatory motivation at the pleading stage.'" *Id.* at 486–87 (quoting *Dooley v. JetBlue Airways Corp.*, 636 Fed. App'x 16, 21 (2d Cir. 2015) (summary order)).

Defendant challenges two aspects of Plaintiff's disability discrimination claim: first, "that he was a qualified individual with a disability," and second, "that Fat Dough discriminated against him on the basis of it." (Dkt. No. 20-6, at 23).

### a.      Definition of Disability Under the ADA

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Courts are to construe this definition broadly. *Id.* § 12102(4)(A).

"To establish a disability [under prong (A)], a plaintiff must: (1) 'show that she suffers from a physical or mental impairment'; (2) 'identify the activity claimed to be impaired and establish that it constitutes a major life activity'; and (3) 'show that her impairment substantially limits the major life activity previously identified.'" *Norman v. NYU Langone Health Sys.,* 492 F. Supp. 3d 154, 163 (S.D.N.Y. 2020) (quoting *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 147 (2d Cir. 2002)). A physical impairment, as defined by Equal Employment and

Opportunity Commission (EEOC) regulations,[7] is "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1). Major life activities are non-exclusively defined to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," in addition to "the operation of a major bodily function." 42 U.S.C. § 12102(2).

An impairment qualifies as a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population"; at the same time, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. § 1630.2(j)(1)(ii). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." *Id.* § 1630.2(j)(1)(i).

b.      Discussion

Here, Defendant argues that Plaintiff has only alleged that he has TAR Syndrome, and thus has not shown a substantial limit on one or more major life activities. (Dkt. No. 20-6, at 24). While Plaintiff's allegations concerning his disability are not as limited as Defendant argues, the Court agrees they fail to allow a plausible inference of a substantial limitation on a major life activity. In addition to alleging that he suffers from TAR Syndrome, Plaintiff asserts that this condition "substantially limits" Plaintiff's "ability" to "us[e] their arms and hands effectively" and causes "low vision" and "fatigue." (Dkt. No. 7, at 3; Dkt. No. 11, at 2; Dkt. No. 40, at 2).

---

[7] The EEOC has issued regulations to implement the ADA and its subsequent amendments. 29 C.F.R. § 1630.1. "Although the regulations are not binding, courts in the Second Circuit afford them significant deference." *Norman*, 492 F. Supp. 3d at 163 (citing *Francis v. City of Meriden*, 129 F.3d 281, 283 n.1 (2d Cir. 1997)).

Plaintiff also alleges that he has a TBI and there is a physician's note indicating a "[l]imitation for lifting or carrying > 50 lbs." (Dkt. No. 7, at 3; Dkt. No. 11, at 2). However, the Amended Complaint is devoid of factual allegations indicating how Plaintiff's conditions, the fatigue they cause, or their impact on his "ability" to use his arms and hands "effectively," substantially limit a major life activity. Such a deficiency "is fatal to [his] claim." *Scarville v. Living Res. Corp.*, No. 21-cv-807, 2022 WL 4365863, at *6, 2022 U.S. Dist. LEXIS 170279, at *14–15 (N.D.N.Y. Sept. 21, 2022) (collecting cases where plaintiff failed to identify a major life activity that was substantially limited by alleged medical condition). *See also Telemaque v. Marriott Int'l, Inc.*, No. 14-cv-6336, 2016 WL 406384, at *7–8, 2016 U.S. Dist. LEXIS 12170, at *22–26 (S.D.N.Y. Feb. 2, 2016) (finding the plaintiff had not alleged a substantial limitation on a major life activity when he pleaded that his arthritis restricted him from running or moving quickly, engaging in daily exercise, and caused pain).

Failing to allege a substantial limitation on a major life activity similarly prevents Plaintiff from establishing he has a disability under prong (B). *See Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 394 (E.D.N.Y. 2016). ("Plaintiff's failure to plausibly allege a substantial limitation to a major life activity . . . precludes her from asserting that she has a record of disability."); *see also* 29 C.F.R. § 1630.2(k)(1) ("An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.").

Under prong (C), "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C.

12102(3)(A); *see Hilton v. Wright*, 673 F.3d 120, 128–29 (2d Cir. 2012) (explaining the change in how prong (C) is be evaluated after the enactment of the 2008 ADA Amendments Act). "When a plaintiff brings a claim on the basis of that [her] employer regarded [her] as disabled, 'the decisive issue is the employer's perception of his or her employee's alleged impairment.'" *Sacks v. Gandhi Eng'g, Inc.*, 999 F. Supp. 2d 629, 633 (S.D.N.Y. 2014) (quoting *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001)).

Even while construing the Amended Complaint liberally, as is required here, Plaintiff has not alleged facts suggesting his employer perceived him as disabled. While the alleged facts suggest that several co-workers viewed him as disabled, (Dkt. No. 7, at 4 (alleging that "Ethan Talley threw [d]irty water" at Plaintiff and "other employees laughed" and told Plaintiff that "he would allow them to treat him" badly because he "is disabled"), these facts do not indicate that his *employer* regarded him as disabled. *See Everitt v. Jarvis Airfoil, Inc.*, No. 19-cv-1853, 2020 WL 4227786, at *4–5, 2020 U.S. Dist. LEXIS 130257, at *12–14 (D. Conn. 2000 (finding that while the statements of plaintiff's co-workers could suggest they viewed plaintiff as "mentally disabled," such statements, even if known by the employer, did not plausibly indicate the employer viewed the plaintiff as mentally disabled absent "some ratification of those statements through words or actions").

Plaintiff also alleges that he asked Wilder, his manager, for "earlier [d]ay shifts to accommodate his disability" and that Wilder, along with the dispatcher, Galloway, yelled at Plaintiff "for not being [f]ast or quick enough to be a Delivery Driver," and demoted him to dishwasher. (Dkt. No. 7, at 4, 6, 9). Absent further detail connecting such comments to a perceived impairment, such statements by themselves are also not sufficient to find that Plaintiff was regarded as disabled. *See Jones v. Target Corp.*, No. 15-cv-4672, 2016 WL 50779, at *6,

2016 U.S. Dist. LEXIS 61, at *17 (E.D.N.Y. Jan 4, 2016) ("[W]hile the allegation that Plaintiff

was timed by her co-workers and told she performed slowly could support a conclusion that

these people regarded her as having a disability, these allegations lack any context and appear

unconnected to any disability.").

Plaintiff has therefore failed to allege a disability under the ADA's definition and thus

any claims based on Title I of the ADA are dismissed without prejudice.

### 2. Title VII Harassment and Sexual Harassment Hostile Work Environment

Defendant moves to dismiss Plaintiff's "Title VII harassment and sexual harassment,"

hostile work environment claim, arguing that: "[e]ven assuming Plaintiff sufficiently alleges an

abusive working environment at Fat Dough . . . there are no facts alleged in connection with any

incident that sufficiently contain or suggest an overtone on the basis of Plaintiff's sex, disability,

or national origin, save for conclusory statements and allegations."[8] (Dkt. No. 20-6, at 28).

Plaintiff opposes Defendant's motion. (Dkt. No. 40, at 3–4).

Under Title VII, it is illegal "to fail or refuse to hire or to discharge any individual, or

otherwise to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex,

or national origin." 42 U.S.C. § 2000e-2(a). Under a hostile work environment theory of sexual

harassment, a plaintiff may "recover even in the absence of a tangible job action against

him." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1155 (E.D.N.Y. 2003). "To establish

a hostile work environment under Title VII . . . a plaintiff must show that 'the workplace is

---

[8] Defendant points out that Plaintiff "suggests a completely different possibility for his alleged treatment that is unrelated to any protected classification" in his NYSDHR charge, in which Plaintiff stated that his co-workers yelled at him "because they're having a bad day." (Dkt. No. 20-6 (quoting Dkt. No. 20-3, at 5)). As this argument concerns allegations outside the Amended Complaint, the Court declines to consider it.

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To survive a motion to dismiss, "the plaintiff must 'plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic].'" *Small v. N.Y.C. Dep't of Ed.*, 650 F. Supp. 3d 89, 99 (S.D.N.Y. 2023) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

### a.    Sexual Harassment

The Amended Complaint alleges facts allow a plausible inference that Defendant created a working environment that was objectively hostile or abusive because of Plaintiff's sex and that Plaintiff subjectively perceived it as such. Plaintiff alleges that on October 12, 13, and 14, 2021, and "on [n]umerous [o]ccassions [sic]" during the twenty-day time period that he worked for Domino's, (October 8–28, 2021), a Domino's manager, Filkins, asked Plaintiff about his "sex and sexual orientation," asked him for "explicit sexual favors," and asked Plaintiff "how [he] performs certain sexual favors." (Dkt. No. 7, at 6). When Plaintiff "denied to answer . . . Filkins' questions, Filkins "bullied . . . and name called" Plaintiff "[a]ntisocial." (*Id.*). Plaintiff alleges that Filkins harassed Plaintiff in other ways during his employment, including by "yelling" at other employees and "scream[ing]" at Plaintiff  when Plaintiff's shift was moved. (*See* Dkt. No. 7, at 3, 6). Viewed altogether, the alleged actions, occurring "[n]umerous" times over a three-week time span, plausibly suggest that the behavior was pervasive. (*See* Dkt. No. 7, at 3, 6, 12). *See also Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203 (2d Cir. 2014) (noting that the

district court should have considered "both sexually overt and facially sex-neutral incidents" when assessing the plaintiff's sex-based hostile work environment claim). Additionally, Plaintiff alleges facts that indicate he perceived the treatment as hostile: Plaintiff states that he complained that he was "humiliated" by Filkins' behavior and reported the harassment multiple times. (Dkt. No. 7, at 6). Accordingly, Defendant's motion to dismiss is denied as to Plaintiff's sex-based hostile work environment claim.

**b.**    **Other Hostile Work Environment Claims**

Plaintiff also alleges hostile work environment based on his Norwegian national origin and disability.  (Dkt. No. 7, at 3; Dkt. Nos. 12, 15). The only non-conclusory facts related to his national origin that he alleges are as follows: "Megan had a conversation with [Plaintiff] about his [n]ational [o]rigin and questioned his [n]ational [o]rigin ethnicity before stealing [Plaintiff's] [d]elivery change." (Dkt. No. 7, at 3). Such facts do not suggest that Megan stole Plaintiff's delivery change because of his national origin, much less provide a basis for a plausible inference that this singular event was so severe as to constitute a hostile or abusive work environment. *See Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004))).

As to a disability-based hostile work environment, Plaintiff alleges that he was called "antisocial," that on October 22, 2021, Galloway and Wilder "yelled" at Plaintiff "for not being [f]ast or quick enough to be a [d]elivery [d]river," and that on October 27, 2021, "other employees laughed [sic] and humiliated" Plaintiff after Ethan threw dirty water at Plaintiff, "insulting [Plaintiff] that he would allow them to treat him like dog shit because [he] is disabled." (Dkt. No. 7, at 4, 6, 11). These allegations, even viewed collectively, are insufficient

19

to allow a plausible inference that the conduct of which he complains is objectively severe and pervasive. *See Littlejohn*, 795 F.3d at 321 ("The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.") (quotation omitted); *see also Guy v. MTA N.Y.C. Transit*, 407 F. Supp. 3d 183, 196 (E.D.N.Y. 2016) (allegations that the plaintiff "identifie[d] a series of incidents," including being laughed it, having his information falsified, had suffered "ridicule, humiliation, demotion, and suspension" failed to allege "facts that would show that the conduct of which he complains is objectively severe and pervasive"); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (finding occasional racist remarks, while "despicable and offensive," failed "to constitute discriminatory behavior that is sufficiently severe or pervasive to cause a hostile environment"). Accordingly, Defendant's motion to dismiss plaintiff's hostile work environment claims is granted.

### 3.    ADA and Title VII Retaliation

The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Likewise, Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). *See also Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 685 (S.D.N.Y. 2018) ("[R]etaliation claims under the two statutes are analyzed under the same framework."). Consequently, under either statute, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he

20

has opposed any unlawful employment practice." *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *see also Salas*, 298 F. Supp. 3d at 685.

Plaintiff puts forward two instances of retaliation in his Amended Complaint. First, he alleges that he was demoted on October 22, 2021, for making an internal complaint on October 14, 2021, in which he complained of Megan's harassment and Filkins' sexual harassment, and asked for a disability accommodation. (Dkt. No. 7, at 6, 9). Second, he alleges that he was fired on October 28, 2021, for reporting discrimination based on his disability and sexual orientation to the police. (*Id.* at 11). Defendant moves to dismiss arguing that the Amended Complaint fails to allege that Plaintiff suffered an adverse employment action, that Plaintiff engaged in a protected activity, and that the protected activity was causally connected to the adverse employment action. (Dkt. No. 20-6, at 26–27, 28–31). Plaintiff opposes Defendant's motion. (Dkt. No. 40, at 2–4).

Here, Plaintiff asserts adverse employment actions: demotion from pizza delivery driver to dishwasher and termination. Defendant does not argue that the allegations concerning demotion and termination fail to allege adverse action. *See Salas*, 298 F. Supp. 3d at 685 ("An adverse employment action in the retaliation context is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." (internal quotation marks omitted) (quoting *Vega*, 801 F.3d at 90)). [9]

### a. Protected Activities

Regarding the first potential incident of retaliation, Plaintiff's alleged protected activity is Plaintiff's October 14, 2021, filing of "an open policy complaint requesting resolution for the

---

[9] To the extent Defendant argues that Plaintiff has not asserted an adverse employment action based on indication in the No Probable Cause Determination that Plaintiff resigned, (*see* Dkt. No. 20-6, at 30), the Court has already rejected this argument. *See supra* Part IV.C.

hostile work environment and being sexually harassed," requesting "earlier day shifts to

accommodate his disability," and requesting to work separate shifts from Filkins "due to being

sexually harassed." (Dkt. No. 7, at 6). An internal complaint regarding sexual harassment and

requesting an accommodation are both protected activities under Title VII and the ADA,

respectively. *See, e.g.*, *Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 651–52 (S.D.N.Y.

2015); *Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012)

(citation omitted).

Defendant does not actually assert that filing an internal complaint or requesting an

accommodation are not protected activities but again argues that Plaintiff does not plausibly

allege he ever told Wilder about Filkins' harassment because he did not describe doing so in his

NYSDHR charge. (Dkt. No. 20-6, at 26). As previously discussed, the Court assumes Plaintiff's

well-pleaded allegations are true for the purposes of this motion to dismiss, *see supra* Part IV.C.

Thus, Defendant's argument does not provide a basis for dismissal of Plaintiff's retaliation

claims.

As to the second alleged incident of retaliation, Defendant asserts that Plaintiff's

allegation that he "made a complaint to the Fort Drum Military police alleging a co-worker broke

into his car" fails to allege protected activity because a report that "someone" broke into

Plaintiff's car "seemingly has nothing to do with one of Plaintiff's protected classifications." (*Id.*

at 26, 30). Defendant also argues that Plaintiff's allegations regarding what he told police are

"are too conclusory to plausibly allege that Plaintiff engaged in protected activity by opposing an

unlawful employment practice." (Dkt. No. 20-6, at 30).

"Employees engage in protected activity when they 'ha[ve] a good faith, reasonable

belief' that they have made a complaint 'opposing an employment practice made unlawful' by

Title VII or the ADA." *Salas*, 298 F. Supp. 3d at 685 (quoting *Kelly v. Howard I. Shapiro &*
*Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013)). "A plaintiff may prevail on a
claim for retaliation even when the underlying conduct complained of was not in fact unlawful."
*See Treglia*, 313 F.3d 713 at 719.

As an initial matter, Plaintiff does not just allege that he told the police that another
employee had broken into his car. Plaintiff's Amended Complaint also alleges that he told the
police detective that "he [h]ad been dealing with ongoing harassment from other employees
based on his [d]isability and sexual orientation." (Dkt. No. 7, at 11). Further, Plaintiff adequately
alleges that he opposed an employment practice made unlawful by Title VII or the ADA. In
support of its argument that Plaintiff's allegations regarding protected activity are too
conclusory, Defendant cites *Deglidio v. Centro Properties, LLC*, No. 11-cv-1353, 2013 WL
440131, at *6 & n.7, 2013 U.S. Dist. LEXIS 15083, at *20–22, 21 n.7 (E.D. Pa. Feb. 4, 2013).
(*See* Dkt. No. 20-6, at 30). But *Deglidio* is distinguishable. There, the court found the plaintiff
failed to allege protected activity where the plaintiff's internal complaint contained no reference
to discrimination based on a protected characteristic. *Deglidio*, 2013 WL 440131, at *6 & n.7,
2013 U.S. Dist. LEXIS 15083, at *20–22, 21 n.7 (E.D. Pa. Feb. 4, 2013) (finding the plaintiff
failed to allege that he had complained of gender discrimination when the internal complaint did
not use such language and instead described an alleged affair between his supervisor and another
employee). Here, Plaintiff specifically alleges that he told police he was experiencing
"harassment" from his co-workers "based on his disability and sexual orientation." (Dkt. No. 7,
at 3, 11). *Cf., Seals v. Marianetti-DesRosiers*, No. 21-cv-988, 2022 WL 3153942, at *4, 2022
U.S. Dist. LEXIS 140150, at *9 (N.D.N.Y. Aug. 8, 2022) (citations omitted) ("Because Plaintiff
only alleges conclusory assertions of having informed her supervisor of a 'hostile work

environment' and filed complaints of 'unlawful discrimination/harassment' and 'bullying,'
without reference to any nexus to membership in a protected class, she has not plausibly alleged
that her complaints were protected under Title VII."). While the Court agrees with Defendant
that Plaintiff's allegations are thin, they are sufficient to allow a plausible inference of protected
activity under the ADA and Title VII. *See Edwards v. Thomson Reuters Inc.*, No. 19-cv-93, 2022
WL 767218, at *6, 2022 U.S. Dist. LEXIS 45076, at *17 (S.D.N.Y. Mar. 14, 2022) (finding the
plaintiff's allegations that "she made a number of verbal complaints to" human resources
"relating to her suspicions of race-based discriminatory pay" were "even if informal . . .
sufficiently specific to constitute protected activity")

### b.    Causal Connection

"A causal connection in retaliation claims can be shown either '(1) indirectly, by showing
that the protected activity was followed closely by discriminatory treatment, or through other
circumstantial evidence such as disparate treatment of fellow employees who engaged in similar
conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by
the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d
111, 117 (2d Cir. 2000).

Defendant argues that there are no allegations regarding "how anyone at Fat Dough
became aware of [Plaintiff's] purported military complaint." (Dkt. No. 20-6, at 31). But Plaintiff
alleges that on the same day he made his report, "a Detective contacted Dorothy," a supervisor,
"about the situation of [Plaintiff's] [c]ar being broken into and questioned the mistreatment of
[e]mployment [sic]." (Dkt. No. 7, at 11). Plaintiff also alleged that Galloway told Plaintiff he
"wasn't allowed to work at Dominos anymore due to involving the police," (*id.*), which, viewed
together with Plaintiff's allegations that he told the police his coworkers were subjecting him to

sexual and disability-based harassment, allows a plausible inference that Defendant fired

Plaintiff because Plaintiff complained of disability and sexual discrimination to the police.

Additionally, both Plaintiff's alleged demotion and termination happened shortly after the

protected activity. Plaintiff has alleged he made the internal complaint on October 14, 2021, and

that he was demoted from driver to dishwasher on October 22, 2021 just eight days later, (*see*

Dkt. No. 7, at 6, 9, 12), and that he was terminated on October 28, 2021, the same day that he

filed the police report, (*see id.* at 11). The closeness in time between the adverse employment

actions and the internal complaint and police report allow a plausible inference of causation here.

*See Littlejohn*, 795 F.3d at 319–20 ("Littlejohn's allegations that the demotion occurred within

days after her complaints of discrimination are sufficient to plausibly support an indirect

inference of causation.")

Plaintiff has therefore adequately stated a claim for retaliation regarding his demotion and

his termination under both the ADA and Title VII.

## V.     PLAINTIFF'S PROCEDURAL OBJECTIONS

On July 13, 2023, Plaintiff submitted a letter "to formally object to the motion to

dismiss," which in part identified various supposed violations of the Local Rules. (*See* Dkt. No.

37). Plaintiff appears to object to Defendant's purported failure to file a case management plan

and comply with discovery requests. (*See id.* at 1–2). However, as the Rule 16 Initial Conference

"and all the related Rule 16 conference deadlines, including the scheduling of discovery and

commencement of the discovery process," has been stayed since June 9, 2023, (*see* Dkt. No. 25,

27, 33, 36), Defendant has no obligation to file a case management plan or respond to discovery.

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (Dkt. No. 20) is **GRANTED in part and DENIED in part**; and it is further;

**ORDERED** that Plaintiff's ADA disability discrimination claim is **DISMISSED without prejudice**; and it is further;

**ORDERED** that Plaintiff's non-sex based Title VII hostile work environment claims are **DISMISSED without prejudice**; and it is further:

**ORDERED** that the Defendant's Motion to Dismiss, (Dkt. No. 20), is otherwise **DENIED**.[10]

**IT IS SO ORDERED.**

Dated: <u>March 29, 2024</u>
　　　　Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

---

[10] Plaintiff has not sought leave to file an amended complaint. Moreover, Plaintiff has already filed one amended complaint and there is no indication that further amendment would be fruitful in this action.