**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JERAMIAH BROWN,

                Plaintiff,

v.

FAT DOUGH INCORP., doing business as
DOMINOS PIZZA,

                Defendant.

5:22-cv-761
(ECC/ML)

---

APPEARANCES:

Jeramiah Brown, *pro se Plaintiff*
Christopher Maugans, Esq., *for Defendant*

**Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION & ORDER

Plaintiff Jeramiah Brown brought this action alleging employment discrimination in violation of federal law against Defendant Fat Dough Incorp., doing business as Dominos Pizza (Fat Dough). Dkt. No. 1. Plaintiff amended the complaint on October 31, 2022. Dkt. No. 7. After initial review under 28 U.S.C. § 1915(e)(2)(B) and a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the following claims remain: (1) retaliation in violation of Title V of the Americans with Disabilities Act (ADA), (2) sexual harassment in violation of Title VII of the Civil Rights Act of 1964, and (3) retaliation in violation of Title VII. Presently before the Court are Plaintiff's motions for summary judgment and sanctions,[1] Dkt. Nos. 80, 88, and Defendant's cross-

---

[1] Plaintiff filed a motion for sanctions, Dkt. No. 80, and Magistrate Judge Miroslav Lovric denied the motion, Dkt. No. 81. Plaintiff "renewed" the motion for sanctions in a "renewed Motion for Sanctions and Summary Judgment," Dkt. No. 88. To resolve all of the legal issues before the Court, and in light of Plaintiff's pro se status, the Court has reviewed both of those motions.

motion for summary judgment, Dkt. No. 84. The motions are fully briefed. Dkt. Nos. 87, 89, 91, 92. For the following reasons, Plaintiff's motions for sanctions and summary judgment are denied, and Defendant's motion for summary judgment is granted.

I.      **Background**[2]

Plaintiff, who is Norwegian and identifies as nonbinary,[3] was born with thrombocytopenia with absent radius, also known as "TAR Syndrome." Am. Compl. at 3; [4] Def. SUMF ¶¶ 7, 8. From October 8, 2021 through October 28, 2021, Plaintiff worked for Fat Dough at its Fort Drum location on at at-will basis. Def. SUMF. ¶¶ 5, 6, 9, 10, 15. Plaintiff was hired as a delivery driver, and his duties included delivering pizzas, washing dishes, and helping with the front counter. *Id*. at ¶ 11.

On Plaintiff's first day of work, Richard Filkins, a Fat Dough manager, showed Plaintiff where he would deliver pizza. Def. SUMF ¶ 20; Plaintiff's Deposition (Pl. Dep.) at 26, Dkt. No. 84-3. According to Plaintiff, during this tour Filkins told him that if he delivered pizzas to a certain part of the base, then he risked having soldiers "require [Plaintiff] to give them oral sex." Pl. Dep. at 18. Defendant does not address this in its Statement of Undisputed Material Facts, but states that Filkins did not ask Plaintiff to perform oral sex. *Id*. at 18; Def. SUMF ¶ 21. Plaintiff does not refer to any other conversations involving sex.

---

[2] The facts are drawn from the parties' submissions including Defendant's Statement of Material Facts, (Def. SUMF), Dkt. No. 84-14, and Plaintiff's Statement of Material Facts, (Pl. SUMF), Dkt. No. 79 at 3, and the exhibits that the parties have submitted, to the extent that they are admissible as evidence. Disputed facts are noted, and any facts in Def. SUMF not specifically denied by Plaintiff are deemed admitted pursuant to N.D.N.Y. Local Rule 56.1.

[3] The Amended Complaint uses "he/him/his" pronouns to refer to Plaintiff. Dkt. No. 7.

[4] Citations to page numbers refer to pagination generated by the ECF system, unless otherwise noted. The ECF page for citations to Plaintiff's filings with duplicative paragraph numbers is provided in parentheses.

The parties dispute whether a delivery driver who Plaintiff "shadowed" for one or two days, Megan Scott, asked a question about Plaintiff's national origin and then stole money that he had to replace. Def. SUMF ¶ 22; Pl. Dep. at 27-28; Am. Compl. at 3; Dkt. No. 84-12 ¶¶ 15, 20.

Plaintiff worked from 2 p.m. to 11 p.m. until he told the general manager that he has "difficulty seeing at night," and the general manager gave him earlier shifts. Def. SUMF ¶¶ 28-30; Pl. Dep. at 11-12. In addition, within three days of when he started working for Fat Dough, Plaintiff asked that he not deliver pizzas because he did not feel safe at Ft. Drum after someone told him that he could not enter any buildings on Ft. Drum when he tried to deliver a pizza to a barracks. Pl. Dep. at 15-16; Def. SUMF ¶ 31-32.

Plaintiff claims that on October 27th, another employee threw dirty water and mushrooms at Plaintiff while Plaintiff was washing dishes. Am. Compl. at 4. Plaintiff also claims that on approximately October 28th, someone broke into his car[5] in a parking lot and drew a "smiley face" on the inside of his windshield with pizza grease. Def. SUMF ¶ 33, 35-36, 40; Pl. Dep. at 18-19. Plaintiff reported the break-in to both his supervisor, Pl. Dep. at 19, and the Fort Drum Police, Dkt. No. 87-4 at 60. According to the supervisor, he interviewed employees and inspected Plaintiff's car, but he saw "an area of dew" on the windshield, and he did not find any evidence of a break-in. Def. SUMF ¶¶ 34, 37-39; Dkt. No. 84-11 ¶¶ 22-25. According to Plaintiff, there were security cameras,[6] and the supervisor did not review them, Pl. Dep. at 20-21, but according to the

---

[5] Plaintiff offered evidence that his doors were unlocked, Pl. Dep. at 21, Dkt. No. 87-3 ¶ 40 (p. 23), and ¶ 40 (p. 25), but also offered evidence that he "consistently locked his vehicle during deliveries," *id*. ¶ 40 p. 22.

[6] Plaintiff later suggests that that there may not have been a camera, stating "management's failure to activate or maintain functional surveillance equipment violates their own security protocols, compromising the integrity of the investigation." Dkt. No. 87-3 ¶ 39 (p. 22).

supervisor, there were no security cameras on the side of the building where Plaintiff parked, and he told Plaintiff that. Dkt. No. 84-11 ¶¶ 21, 24. The police report states that "Brown had cleaned the grease up himself and there was no further reported or visible damage to the vehicle." Dkt. No. 87-4 at 60.

Plaintiff also reported to both his supervisor and the police that he overheard other employees discuss slashing his tires. Def. SUMF ¶¶ 42. After investigating, the supervisor determined that "drivers were discussing putting snow tires on their personal vehicles." *Id*. ¶ 43. Plaintiff's tires were never slashed. *Id.* ¶ 44.

On approximately October 25, 2021, Plaintiff told a supervisor than he was resigning with two weeks of notice. Def. SUMF ¶¶ 45, 46; Pl. Dep. at 32. The supervisor responded that Plaintiff "would be welcome back" and that "they would allow [Plaintiff] to come back for more shifts if [Plaintiff] needed to." Pl. Dep. at 33. According to Fat Dough, the resignation was "voluntary," but Plaintiff claims that it was "coerced by ongoing harassment and discriminatory practices." Dkt. No. 87-3 ¶ 45 (p. 31). According to Plaintiff, supervisor Brian Galloway called him on October 29, 2021, the day after the windshield incident, and terminated his employment because Plaintiff filed a police report.[7] Dkt. No. 87-3 ¶5-13 (p. 4-5); Dkt. No. 87-4 at 60; Pl. Dep. at 32. Plaintiff provided a screenshot from his cell phone to prove that this call occurred, but the screenshot only shows two outgoing calls to "Domino's" on October 29, 2021, and no incoming calls. Dkt. No 87-4 at 59. According to Galloway, Galloway did not fire Plaintiff, Dkt. No. 84-10 at ¶ 9, and Plaintiff called Galloway to tell him that Plaintiff would not work his last two shifts because UPS had hired Plaintiff, *id*. at ¶ 10.

---

[7] At times, Plaintiff argues that his termination was in response to "ethics complaints" or contacting an "Ethics Hotline," but Plaintiff has introduced no evidence indicating that Plaintiff filed any formal ethics reports with Defendant. Dkt. No. 91 at 2, 6-7.

4

Plaintiff began working for UPS on November 1, 2021.  Def. SUMF ¶ 49.

**II.     Legal Standard**

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

When considering cross-motions for summary judgment, a court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."  *Hotel Emp. & Rest. Emp. Union, Local 100 of New York, N.Y. & Vicinity v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (internal quotation marks omitted)).

When a plaintiff is proceeding pro se, the court "reads his pleadings 'liberally and interpret[s] them to raise the strongest arguments that they suggest.'"  *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999)).  The "application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Id*.

"While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be

6

impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys*, 426 F.3d at 554 (cleaned up). "[W]hen the facts alleged are so contradictory that doubt is cast upon their plausibility," a court is "authorized to pierce the veil of the complaint's factual allegations, dispose of some improbable allegations, and dismiss the claim." *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32 (1992)) (cleaned up).

### III. Discussion

#### A. Plaintiff's Motions for Summary Judgment and Sanctions[8]

##### 1. Sanctions

Plaintiff seeks sanctions against Defendant for allegedly harassing Plaintiff with counterclaims and "retaliatory conduct." Dkt. Nos. 80 at 2; 88 at 1. Plaintiff's initial motion for sanctions was denied, Dkt. No. 81, and Plaintiff raises largely the same arguments in his renewed motion, Dkt. No. 88.

Plaintiff's renewed motion is mostly conclusory language without any factual assertions that could support his request. In addition, contrary to Plaintiff's assertions, Defendant did not file any counterclaims against Plaintiff. Finally, Plaintiff has not described any specific "retaliatory conduct." Dkt. No. 88 at 3. Plaintiff's renewed motion for sanctions is therefore denied.

It appears, however, that Plaintiff could be sanctioned because he included at least one fictitious legal citation in his submissions: "*Lynch v. U.S. Postal Service*, 2016 WL 7338415

---

[8] Plaintiff repeatedly asks for Magistrate Judge Lovric to be recused in his "Renewed Motion for Summary Judgment and Sanctions," but those requests will not be considered because a summary judgment motion is not the appropriate kind of motion to raise those requests, and the underlying arguments have already been addressed. *See* Dkt. No. 81.

(N.D.N.Y. Dec. 19, 2016)." Dkt. No. 80 at 4.  That Westlaw citation is for an unrelated habeas corpus case: *Green v. New York*, No. 14-cv-2073, 2016 WL 7338415 (S.D.N.Y. Dec. 19, 2016).  Although there are several cases with the caption, "Lynch v. U.S. Postal Service," none were issued by this court or in 2016.  *See Lynch v. U.S. Postal Serv.*, 17 F. App'x 996 (Fed. Cir. 2001); *Lynch v. U.S. Postal Serv.*, 3 F. App'x 287 (6th Cir. 2001); *Lynch v. U.S. Postal Serv.*, 127 F. App'x 487 (Fed. Cir. 2005); *Lynch v. U.S. Postal Serv.*, 316 F. App'x 972 (Fed. Cir. 2008).

All litigants, including pro se litigants, must make sure that all assertions of fact and law in their submissions are true.  Fed R. Civ. P. 11(b).  If a litigant cannot verify a legal assertion, the litigant should omit the assertion rather than include a false statement.  Plaintiff testified that he used ChatGPT to draft legal papers.  Dkt. No. 89-1 at 5-10.  It is well established that artificial intelligence regularly "hallucinates" and includes false statements.  *See Benjamin v. Costco Wholesale Corp.*, No. 2:24-cv-7399, 2025 WL 1195925 (E.D.N.Y. Apr. 24, 2025) ("In recent years, courts across the country have continued to receive submissions littered with AI-generated 'case' citations . . . . This epidemic of citing fake cases has continued unabated, and, by way of example, the undersigned has identified at least four reported cases in the recent *weeks* confronting this very same issue.") (collecting cases)*; see also* Jeff Neal, *The Legal Profession in 2024: AI*, HARV. L. TODAY (Feb. 14, 2024), https://hls.harvard.edu/today/harvard-law-expert-explains-how-ai-may-transform-the-legal-profession-in-2024/.

The Court has decided not to impose sanctions at this time, but Plaintiff is cautioned that he faces a substantial risk of sanctions if he continues to use artificial intelligence without carefully verifying all citations.

    **2.**    **Summary Judgment**

Plaintiff seeks summary judgment on his "wrong termination and retaliation" claims, but his legal argument regarding the basis for summary judgment—consisting only of conclusory statements relying on Fed. R. Civ. P. 56 as the sole "Legal Justification" untethered to any of his three specific claims—is not clear. *See* Dkt. No. 88 at 1-4, 5, 9, 12. Although courts give special leniency to pro se plaintiffs and construe their papers "liberally and interpret them to raise the strongest arguments that they suggest," *Jorgensen*, 351 F.3d at 50, Plaintiff's conclusory assertions are insufficient, *see id.* ("application of this different standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment.").

As for Plaintiff's statement of material facts, it does not set out, in particularity, with citations to the record, the factual basis for summary judgment, and it contains contradictory assertions of fact.[9] Pl. SUMF; Dkt. No. 87-3. As a result, the Court cannot determine which facts could support a summary judgment.

For all of these reasons, Plaintiff's motion for summary judgment is denied.

**B.     Defendant's Cross-Motion for Summary Judgment**

   **1.     Preclusion[10]**

Defendant argues that collateral estoppel bars Plaintiff's claims because the New York Supreme Court of Jefferson County affirmed the NYSDHR No Probable Cause Determination for

---

[9] For example, Plaintiff referred to a "police report against Domino's management for harassment," Pl. SUMF at 3, but the report involved a complaint about vandalism and statements about the "possibility of slashing [Plaintiff's] vehicle's tires," Dkt. No. 87-4 at 60; Plaintiff stated that he was "wrongfully terminated from employment with Defendant due to filing an ethics complaint and reporting a carjacking incident to law enforcement," Dkt. No. 80 at 7-8, but Plaintiff offered no evidence of an ethics complaint, and the police report did not mention carjacking, Dkt. No. 87-4 at 60; Plaintiff stated that he was "denied the right to work his scheduled shift on October 29, 2021," Pl. SUMF at 3, but Plaintiff voluntarily resigned to accept another position that began on November 1, 2021, Pl. Dep. at 5, 33.

[10] Much of this section comes from Chief Judge Sannes's thoughtful analysis of the issue in her decision on the motion to dismiss. Dkt. No. 43 at 7-9.

his claims. Fat Dough Memorandum of Law (Def. MOL), Dkt. No. 84-15 at 7-9. Plaintiff does not respond to this argument.

"The federal full faith and credit statute provides, in relevant part, that the 'judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Lawtone-Bowles v. City of New York*, 22 F. Supp. 3d 341, 348 (S.D.N.Y. 2014) (quoting 28 U.S.C. § 1738). "Under the full faith and credit statute, 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

"The doctrine of collateral estoppel—also known as issue preclusion—prohibits a party from re-litigating an issue in certain circumstances. Under New York law, collateral estoppel bars claims where '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" *Lawtone-Bowles*, 22 F. Supp. 3d at 348 (quoting *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020)).

Further, "a state court affirmation of a state administrative determination is entitled to preclusive effect in federal court, so long as the state's administrative proceedings satisfy the minimum requirements of the Due Process Clause of the Fourteenth Amendment." *Lewis v. Health & Hosps. Corp.*, No. 11-cv-99, 2013 WL 2351798, at *4 (S.D.N.Y. May 31, 2013) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481–82 (1982)). A NYSDHR "determination finding no probable cause and dismissing a complaint, coupled with a state court judgment affirming the

administrative determination, preclude[s] further litigation of federal claims arising from the same facts resolved by the prior proceedings." *Id.* (citing *Kremer*, 456 U.S. at 485). However, a NYSDHR determination by itself, without state court involvement, is not enough to create preclusive effect. *See Lawtone-Bowles*, 22 F. Supp. 3d at 348 n.7 (S.D.N.Y. 2014) (explaining that a NYSDHR proceeding cannot by itself have preclusive effect "because [28 U.S.C.] § 1738 applies to the judgments of state courts, not state administrative agencies, and the [NY]SDHR's determination in this case was not judicially reviewed" (citations omitted)).

Here, the NYSDHR issued a No Probable Cause Determination to Plaintiff after he filed a charge with the agency. Dkt. No. 84-7 at 2-4. As to the Jefferson County Supreme Court action, Defendant provided (1) the petition Plaintiff filed in the New York Supreme Court in Jefferson County, Dkt. No. 84-8, and (2) the docket showing that (a) the case was closed, (b) the "decision type" was a "long form order;" and (c) Plaintiff's request was denied, Dkt. No. 84-9 at 3. This is not a sufficient basis to determine what issues and facts were litigated in that proceeding. Without the long form order itself, it is not clear whether: (1) the state court reached the merits of the NYSDHR determination; (2) the NYSDHR determination was "actually and necessarily decided," *Lawtone-Bowles*, 22 F. Supp. 3d at 348 (quotation omitted); or (3) the state court case was dismissed with or without prejudice. Defendant's motion for summary judgment on this basis is therefore denied.

### 2. ADA Retaliation

Defendant argues that Plaintiff voluntarily resigned and "therefore did not suffer an adverse employment action" as required for an ADA retaliation claim. Def. MOL at 14-15. Plaintiff appears to take the position that he was constructively discharged, Dkt. No. 87-3 at 4-5, but he also argues repeatedly that he was terminated. Dkt. Nos. 80 at 4, 7; 88 at 2, 3, 7, 9, 12, 19, 21, 23, 25.

11

To state a prima facie case of retaliation, Plaintiff must allege that "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

"The standard for constructive discharge is whether 'working conditions [became] so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'" *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 311 (S.D.N.Y. 2009) (quoting *Pa. State Police v. Suders,* 542 U.S. 129, 141 (2004)). "'Constructive discharge occurs when an employer *deliberately* makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Id.* at 311-12 (quoting *Kader v. Paper Software, Inc.,* 111 F.3d 337, 339 (2d Cir. 1997)). A plaintiff alleging constructive discharge must demonstrate that "the employer's actions were deliberate and not merely negligent or ineffective." *Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir. 2004) (quotation omitted). The standard for "intolerable" working conditions is a higher bar than that for a hostile work environment claim. *See Ferraro v. Kellwood Co.*, No. 03-cv-8492, 2004 WL 2646619, at *7 (S.D.N.Y. Nov. 18, 2004) ("Constructive discharge can be seen as an aggravated case of hostile work environment.").

Here, even viewing the evidence in the light most favorable to Plaintiff, he cannot establish an adverse employment action. As Plaintiff admits, Defendant did not reduce his salary or change his job title, Dkt. No. 87-3 at ¶¶ 12-13 (p. 6). After Plaintiff resigned from his employment with Defendant, a supervisor told him that his position remained open and that he was welcome to return. Def. SUMF ¶ 45-48; Pl. Dep. at 32-33 (supervisor "had insinuated that he wanted me to stay, he didn't want me to leave and didn't want me to quit . . . . He said that I would be welcome

back."); 87-3 ¶ 45 (p. 31) (admitting that the resignation was initiated by Plaintiff, but asserting that it was coerced).

As to Plaintiff's constructive discharge argument, even viewing the evidence in the light most favorable to Plaintiff, there is insufficient evidence to support constructive discharge. Plaintiff admits that his supervisor was disappointed that Plaintiff was leaving and told Plaintiff that his position would remain open if Plaintiff wished to return. Pl. Dep. at 32-33. Even assuming that an employee threw dirty water and mushrooms at him, an employee drew a "smiley face" with pizza grease on his windshield, and employees talked about slashing Plaintiff's tires, these conditions are not objectively intolerable and, even if they were, there is no evidence that Plaintiff's supervisors deliberately caused those issues.

Given the lack of evidence of an adverse employment action, Defendant's motion for summary judgment on Plaintiff's ADA retaliation claim is granted.

### 3. Title VII Sexual Harassment

Defendant argues that Plaintiff's generic allegations were not sufficiently pervasive to create a hostile work environment, and there is no evidence that any actions were taken on the basis of Plaintiff's sex. Def. MOL at 1-12. Plaintiff, who identifies as nonbinary, argues that he was subjected to a "hostile work environment." Dkt. No. 88 at 31.

Sexual harassment under Title VII can be alleged either under a "quid pro quo" theory or a "hostile work environment" theory. To allege Title VII harassment under a hostile work environment theory, "a plaintiff must plead facts that would tend to show that the complained conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the

plaintiff's sex." *Barton v. Warren Cty.*, No. 119-cv-1061 (GTS), 2020 WL 4569465 at *8 (N.D.N.Y. Aug. 7, 2020) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)). "To satisfy this standard, a plaintiff must 'produce enough evidence to show that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Andersen v. Rochester City Sch. Dist.*, 481 F. App'x 628, 630 (2d Cir. 2012) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010)).

To determine whether conduct is "severe or pervasive," courts review "the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). The "severe or pervasive" standard is difficult to meet. *See Davis v. Verizon Wireless*, 389 F. Supp. 2d 458, 475-77 (W.D.N.Y. 2005) (granting summary judgment for the employer because the evidence was insufficient to establish a hostile work environment where the employee was sexually propositioned twice and, after rejecting the advances, shunned by her co-workers); *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 190 (E.D.N.Y. 2013) (no hostile work environment when employees "spoke frequently about their sex lives and showed explicit photographs in the workplace, creating an uncomfortable and inappropriate work environment"); *Alfano v. Costello*, 294 F.3d 365, 380-81 (2d Cir. 2002) (same where allegations included four sexually inappropriate comments/conduct combined with eight examples of sex-based disparate treatment over a five-year span); *id.* at 379 (collecting cases from other circuits where the evidence was insufficient to establish a hostile work environment). Furthermore, if the conduct occurs over

a brief period of time, it is unlikely to be considered "severe or pervasive." *See Ford v. N.Y.C. Dep't of Health & Mental Hygiene,* 545 F. Supp. 2d 377, 393 (S.D.N.Y. 2008) ("while [the plaintiff] was subjected to unkind comments on a daily basis, the comments continued for only four months," and concluding that for this and other reasons, "no reasonable jury could find that the alleged misconduct was so severe or pervasive as to be objectively hostile or abusive").

Here, viewing the evidence in the light most favorable to Plaintiff, during his approximately 20-day employment, a supervisor told him that soldiers may request oral sex from him, an employee threw dirty water and mushrooms at him once, an employee drew a "smiley face" on his windshield with pizza grease, and employees allegedly discussed slashing his tires. Although this is inappropriate behavior, it is not sufficient for Plaintiff to establish the severe and pervasive environment required for hostile work environment claim. Furthermore, Plaintiff cannot establish that any of these actions were connected to Plaintiff's sexual identity or expression. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's Title VII harassment claim.

### 4.     Title VII Retaliation

Defendant argues that Plaintiff voluntarily resigned, and there is no adverse employment action to support a retaliation claim. Def. MOL at 13-15. Plaintiff argues that he was terminated "shortly after filing a complaint regarding discriminatory practices, a protected activity under federal law." Dkt. No. 88 at 2.

"To make out a *prima facie* case for Title VII retaliation, a plaintiff must show 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Dotson v. City of Syracuse*, 688 F. App'x 69, 72 (2d Cir. 2017)

(quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (additional quotation omitted) (cleaned up)).

Here, for the reasons articulated above, there is no adverse employment action because Plaintiff resigned, and even viewing the evidence in the light most favorable to Plaintiff, there is not sufficient evidence of constructive discharge. Accordingly, Defendant's motion for summary judgment on Plaintiff's Title VII retaliation claim is granted.

### IV. Conclusion

For these reasons, it is hereby

**ORDERED** that Plaintiff's motions for sanctions and summary judgment under Rule 56, Dkt. Nos. 80, 88, are **DENIED**, and it is further

**ORDERED** that Defendant's motion for summary judgment under Rule 56, Dkt. No.84, is **GRANTED**, and it is further

**ORDERED** that the Clerk of the Court is directed to enter judgment accordingly and close this action.

**IT IS SO ORDERED.**

Dated: September 17, 2025

Elizabeth C. Coombe
U.S. District Judge